UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRY DURAN LEYVA, (A 206-002-596),<br>Petitioner,<br>v.<br>WARDEN,<br>Respondent. | No. 1:26-cv-04038-DJC-CKD<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

**I. Factual and Procedural History**

Petitioner, a citizen of Cuba, became a lawful permanent resident of the United States in 2013. ECF No. 5-1 at 3. He suffers from epilepsy, which he treats with prescribed medication. ECF No. 1 at 9. In 2016, Petitioner was convicted under Florida Statute § 831.09 for attempting to cash a forged check. ECF No. 5-2 at 16. On January 23, 2026, when Petitioner returned to the United States after a trip to Cuba, U.S. immigration officials detained him and initiated removal proceedings against him. ECF No. 5-1. The charging document initially charged Petitioner as being removable under 8 U.S.C. § 1227(a)(2)(A)(i) for, within five years of admission, having been convicted of a crime involving moral turpitude ("CIMT") for which a sentence of at least

one year could be imposed. ECF No. 5-1 at 3-6. It was later amended to include a charge of inadmissibility under 8 U.S.C. § 1182(a)(2)(A)(i)(I) for simply having committed a CIMT. Id. at 7. As a defense to removal, Petitioner has filed an application for a waiver of inadmissibility pursuant to 8 U.S.C. § 1182(h). ECF No. 13-1 at 3.

Petitioner filed a petition for writ of habeas corpus on May 27, 2026, arguing that his conviction did not necessarily trigger mandatory detention and that prolonged detention without a bond hearing and the lack of appropriate medical care in detention violate his Fifth Amendment right to due process. ECF No. 1. Based on the information in the initial petition, the district court judge assigned to this case ordered Respondent to address whether this case differed from Garcia Mariagua v. Chestnut, No. 1:25-cv-01744-DJC-CSK, 2025 WL 3551700 (E.D. Cal. Dec. 11, 2025) and other similar cases decided by this court regarding the government's expansion of mandatory detention under 8 U.S.C. § 1225(b)(2). ECF No. 4. In its answer, Respondent clarified that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) due to his CIMT conviction and the case is therefore materially distinguishable from Garcia Mariagua. ECF No. 5. Respondent also emphasized that Petitioner's detention had not (yet) become prolonged. Id. After the appointment of counsel, Petitioner submitted an amended petition articulating his argument that his CIMT conviction does not necessarily render him subject to § 1226(c) because he was not sentenced to at least a year imprisonment. ECF No. 10. He further alleged that his detention burdens the preparation of his application for a waiver of inadmissibility, making continued detention without bond no longer tied to its statutory purpose and therefore unreasonable. Id. Respondent's answer reiterated its position that Petitioner's conviction subjects him to mandatory – but not indefinite – detention, and that Petitioner may request a Joseph hearing before an Immigration Judge if he wishes to contest whether § 1226(c) applies. ECF No. 12. See also Matter of Joseph, 22 I&N Dec. 799 (BIA 1999). Petitioner's reply raised an as-applied due process challenge to Petitioner's detention which has now exceeded six months. ECF No. 13.

## II. Legal Standards

### A. Constitutional Framework

The Constitution guarantees the availability of the writ of habeas corpus "to every individual

detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A writ of habeas corpus may be granted to a petitioner in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

### B. Statutory Immigration Framework

The detention of a noncitizen pending removal proceedings is governed by 8 U.S.C § 1226. While § 1226(a) allows the Attorney General to either detain *or* release noncitizens while their removal proceedings are pending, § 1226(c) imposes *mandatory* detention on certain noncitizens. 8 U.S.C § 1226(c)(1) ("The Attorney General *shall* take into custody…) (emphasis added). See also 8 U.S.C § 1226(c)(4) (allowing release *only if* the Attorney General ("AG") deems it necessary for witness protection *and* if the AG determines such noncitizen witness will not pose a danger or flight risk). Subsection (c)(1)(A) mandates detention for any noncitizen who is inadmissible under § 1182(a)(2) for certain criminal convictions, including a crime involving moral turpitude. 8 U.S.C. § 1226(c)(1)(A); 8 U.S.C. § 1182(a)(2).

## III. Analysis

### A. Applicability of § 1226(c)

Petitioner argues that because he was not sentenced to at least a year imprisonment, his CIMT conviction should not have triggered mandatory detention. He emphasizes that 8 U.S.C. § 1226(c)(1)(B) mandates detention for a deportable noncitizen convicted of *multiple* CIMTs and § 1226(c)(1)(C) mandates detention for deportable noncitizens convicted of a *single* CIMT *only if* committed within five years of admission and sentenced to a year or more in prison. By pointing out that the statute specifically covers *certain* single CIMT convictions in subsection (c)(1)(C), Petitioner argues that subsection (c)(1)(A) – which covers criminal grounds of inadmissibility, including commission of a single CIMT - should be read to require that, for the purposes of mandatory detention, the CIMT conviction must have also resulted in at least one year of

imprisonment. Petitioner points out that reading the statute to include any single CIMT conviction regardless of sentence length could render an absurd result that Congress may not have intended. Indeed, based on the plain reading of the statute, a lawful permanent resident ("LPR") with one CIMT conviction with a sentence of less than one year would not be subject to removal or mandatory detention while in the United States, but as soon as that same LPR departs the U.S. then attempts to return, they would be deemed inadmissible and subject to removal proceedings and mandatory detention. Petitioner questions, then, whether a returning LPR, like Petitioner, should be charged as inadmissible. The Supreme Court already addressed that issue in Blanche v. Lau, 146 S.Ct. 1981:

> "A lawful permanent resident who has 'committed an offense identified in section 1182(a)(2)' may 'be regarded as seeking an admission.' § 1101(a)(13)(C)(v). Section 1182(a)(2), in turn, identifies any 'crime involving moral turpitude.' § 1182(a)(2)(A)(i)(I). Putting the provisions together, if a lawful permanent resident has committed a crime involving moral turpitude, he may be regarded as seeking admission. And, because he is seeking admission, he 'may be charged with any applicable ground of inadmissibility under section 1182(a),' § 1229a(a)(2), including being convicted of or admitting to 'a crime involving moral turpitude,' § 1182(a)(2)(A)(i)(I).

Blanche, 146 S.Ct. 1981 at 1988. The undersigned acknowledges this as one of many absurdities within our nation's immigration laws but finds no binding or persuasive authority to read §1226(c)(1)(A) as requiring a one-year sentence for a CIMT to trigger mandatory detention. Absent a showing that Petitioner's conviction under Fla. Stat. § 830.19 is not a CIMT,[1] the undersigned finds that Petitioner is properly charged under § 1182(a)(2) and therefore subject to mandatory detention pursuant to § 1226(c)(1)(A).

**B. Due Process Claim**

The amended petition raises an as-applied procedural due process challenge to the

[1] Petitioner did not dispute that Fla. Stat. § 830.19 is a CIMT, and Respondent noted that the Ninth Circuit has found that crimes that have fraud as an element are categorically CIMTs. Espinso-Castillo v. Holder, 770 F.3d 861, 863 (9th Circuit 2014), citing Planes v. Holder, 652 F.3d 991, 997-98 (9th Cir. 2011). However, should Petitioner wish to challenge whether the crime is categorically a CIMT subjecting him to mandatory detention, he may request a hearing before an Immigration Judge pursuant to Matter of Joseph, 22 I&N Dec. 799 (BIA 1999).

constitutionality of Petitioner's prolonged mandatory detention. At this point, Petitioner has been detained for over six months.

**i. Viability of as-applied challenges to mandatory detention**

The Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c) in Demore v. Kim, 538 U.S. 510 at 531 (2003). However, the Supreme Court did so with the understanding that § 1226(c) detention is relatively "brief" and "limited," and "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the alien chooses to appeal." Id. at 513, 529 n.12, 530. Justice Kennedy joined the opinion in full but wrote a concurring opinion recognizing the viability of as-applied challenges under the majority's framework: "[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident [noncitizen] . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Demore, 538 U.S. at 532 (Kennedy, J., concurring). Later, in Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court recognized the right to bring such as-applied challenges: "Our decision today on the meaning of that statutory provision [8 U.S.C. § 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it." Preap, 586 U.S. at 420.

The Ninth Circuit Court of Appeal has expressly declined to address "[w]hether due process requires a bond hearing" in such situations. Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022), cert. granted, judgment vacated, 144 S. Ct. 1339 (2024). However, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional." Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018). Other Circuit Courts of Appeal have concluded that Demore does not foreclose as-applied challenges to prolonged detention under § 1226(c). Recently, the Second Circuit held that "[t]he Constitution does not permit the Executive to detain a noncitizen for an unreasonably prolonged period under section 1226(c) without a bond hearing; at some point, additional procedural protections—like a bond hearing—become necessary." Black v. Decker, 103 F.4th 133, 145 (2d Cir. 2024). The undersigned finds this authority persuasive and agrees that Demore does not bar an as-applied

challenge to prolonged detention without an appropriate hearing to determine whether such detention is justified. The next step is to determine the appropriate framework in which to analyze Petitioner's procedural due process argument.

**ii. Mathews v. Eldridge Procedural Due Process Test**

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accord with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

The undersigned has considered the various tests developed by district courts within the Ninth Circuit, and finds that Mathews v. Eldridge, 424 U.S. 319 (1976), provides the appropriate test for due process challenges to prolonged detention under § 1226(c). The undersigned is particularly persuaded by the Second Circuit's reasoning in Black, 103 F.4th at 145-49, that the Mathews test is flexible enough to account for the factors identified by federal courts when deciding whether detention under § 1226(c) has become unreasonably prolonged. Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

**1. Private interest**

An individual's private interest in "freedom from prolonged detention" is "unquestionably substantial." Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). Courts of Appeal have

generally declined to adopt a specific threshold for when detention under § 1226(c) becomes prolonged. See German Santos v. Warden Pike Cty. Correctional Facility, 965 F.3d 203, 211 3d Cir. 2020); Black, 103 F.4th at 150; Reid v. Donelan, 17 F.4th 1, 7–9 (1st Cir. 2021). While the Ninth Circuit has not addressed this question, it has previously referred to detentions longer than six months as prolonged "in the context of detentions for which no individualized bond hearings had taken place at all because the statutes on their faces did not allow for them." Rodriguez Diaz, 53 F.4th at 1207 (citations omitted). Indeed, other courts within this Circuit have found due process violations where the length of mandatory detention without bond was similar to the length of detention at issue here. See, e.g., Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and "neither release nor removal are imminent").

Moreover, courts hearing as-applied challenges to § 1226(c) detention have also considered the likely duration of future detention. See Lopez v. Garland, 631 F. Supp. 3d 870, 880-81 (E.D. Cal. 2022) (finding petitioner's administrative appeals and likely appeal to the Ninth Circuit weighed toward granting request for bond hearing). Petitioner's next master calendar (preliminary) hearing in Immigration Court has been scheduled for August 5, 2026. ECF No. 13-1 at 3. That means an individual hearing on the merits of Respondent's claim has not been scheduled yet. Additionally, a hearing before an Immigration Judge is not the end of Petitioner's removal proceedings. Either party may choose to appeal the IJ's decision to the Board of Immigration Appeals and Petitioner could ultimately seek review by the Ninth Circuit Court of Appeals. Based on its duration to date and the likelihood of continued mandatory detention during all phases of removal proceedings, the undersigned finds Petitioner's detention is sufficiently "prolonged" and confers a substantial private interest.

**2. Risk of erroneous deprivation**

The second Mathews factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335. This factor favors Petitioner. "[T]he risk of

an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." Diouf v. Napolitano, 634 F.3d 1081, 1092 (9th Cir. 2011) (abrogated on other grounds). Indeed, "[i]n the absence of any meaningful initial procedural safeguards, it appears to us that almost any additional procedural safeguards at some point in the detention would add value." Black, 103 F.4th at 153 (emphasis in original); see also Jimenez v. Wolf, No. 19-cv-7996 NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding "high" risk of an erroneous deprivation where petitioner had not received any bond or custody redetermination hearing during his one-year detention under § 1226(c)). Additional procedures are likely to be particularly meaningful. Petitioner's convictions stem from a non-violent crime committed a decade ago. As a longtime lawful permanent resident, Petitioner has a strong interest in pursuing a defense against removal, thereby making his risk of flight low. Accordingly, the second Mathews factor also weighs in Petitioner's favor.

**3. Government Interest**

Under this factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. Higher courts have repeatedly recognized that, "[t]he government has an obvious interest in 'protecting the public from dangerous criminal [noncitizens].'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore, 538 U.S. at 515). Courts have also recognized that the detention of noncitizens during removal proceedings can serve the legitimate government purpose of preventing flight. Prieto-Romero v. Clark, 534 F.3d 1053, 1065 (9th Cir. 2008) (citing Demore, 538 U.S. at 528). Thus, in some general way, the government has an interest in the detention of non-citizens held under § 1226(c). However, "the additional procedural safeguards we would allow here under Mathews do nothing to undercut those interests. At any ordered bond hearing, the IJ would assess on an individualized basis whether the noncitizen presents a flight risk or a danger to the community, as IJs routinely do for other noncitizen detainees." Black, 103 F.4th at 153–54; see also Jimenez, 2020 WL 510347, at *3 ("Providing a bond hearing would not undercut the government's asserted interest in effecting removal. After all, the purpose of a bond hearing is to inquire whether the alien represents a

flight risk or danger to the community.") (citing In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006)). In Petitioner's case, the government's interest in further detaining him without a hearing to determine whether such detention is justified is minimal. Administrative burden is a legally cognizable interest under Mathews, but Respondent's interest is diminished by the low fiscal and administrative burdens associated with a bond hearing. See D. L.C. v. Wofford, 2026 WL 25511, at *5 (E.D. Cal. Jan. 5, 2026) ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government." (quoting Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

**IV. Remedy**

For reasons explained above in the Mathews analysis, the undersigned finds a bond hearing to be the appropriate relief in this case. At the bond hearing, the government should bear the burden of demonstrating by clear and convincing evidence that Petitioner presents a risk of flight or danger. See Singh v. Albarran, No. 1:26-cv-0940 DC DMC (HC), 2026 WL 392169, at *5 (E.D. Cal. Feb. 12, 2026) (collecting cases); Singh v. Chestnut, No. 1:26-cv-00127 DC SCR (HC), 2026 WL 766567 (E.D. Cal. March 18, 2026) (adopting Findings and Recommendations and granting a bond hearing). This is the appropriate burden given the liberty interests at stake. See Black, 103 F.4th at 157 ("[O]nce detention under section 1226(c) has become so prolonged that due process warrants a bond hearing . . . the government must justify continued detention at such a hearing . . .by clear and convincing evidence.").

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be GRANTED.

2. Respondent be ordered to provide Petitioner with a constitutionally adequate bond hearing before an Immigration Judge at which the government shall bear the burden of justifying Petitioner's continued detention by clear and convincing evidence, within fourteen (14) days of any order resolving the § 2241 petition.

3. Respondent be further directed to file a notice certifying compliance with the above provision within seven (7) days from the date of the bond hearing.

4. If Petitioner is granted release on bond, Respondent shall return all of Petitioner's

documents and possessions at the time of release.

5. Any order not address the circumstances in which Respondent may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of the final order of removal.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 29, 2026

Carolyn K. Delaney

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3 dura4038.imm.frs